UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLD LINE LIFE INSURANCE COMPANY                                    PLAINTIFF

VS.                                              Civil Action No.: 3:05-cv-722 DPJ-JCS

NICHOLAS BROOKS, RUFUS BROOKS                              DEFENDANTS
JR., AMANDA BROOKS, AND ROGER
BROOKS

MEMORANDUM OPINION AND ORDER[*]

I.      **INTRODUCTION AND PROCEDURAL HISTORY:**

        This is an interpleader action brought by Plaintiff Old Line Life Insurance Company

pursuant to Federal Rule of Civil Procedure 22.  Old Line's policy holder, Rufus Brooks Sr., died

at the hands of his sons Nicholas Brooks and Rufus Brooks Jr.  The policy listed the two sons

and Rufus Sr.'s daughter Amanda Brooks as the sole primary beneficiaries.  Rufus Sr.'s twin

brother Roger Brooks was named as the contingent beneficiary.  Neither Nicholas nor Rufus Jr.

has participated in this litigation, and neither is eligible to take under the policy because of their

part in their father's death.  Amanda claims that she is entitled to all of the proceeds of the policy

as the sole eligible primary beneficiary.  Roger claims that as contingent beneficiary he is entitled

to either all of the proceeds of the policy or to the shares that would have gone to Nicholas and

Rufus Jr. but for their disqualification.  Because the policy is silent as to when a contingent

beneficiary will share in the policy proceeds, Old Line interpled the funds.[1]

---

[*]The Memorandum Opinion and Order entered in this case on March 21, 2007 [114], is withdrawn, and the
following is substituted therefor.

[1]This entire action could have been easily avoided had the Old Line policy explained when a contingent
beneficiary becomes eligible to recover under the policy.

The case is now before the Court on Amanda's and Roger's cross motions for summary judgment, Roger's alternative motion for default judgment, and Amanda's motions to strike Roger's expert, two affidavits, and a police statement.  The Court, having fully considered the parties' submissions and the applicable law, rules that Amanda's motion for summary judgment is denied, Roger's motion for summary judgment is granted in part and denied in part, Roger's motion for default judgment is denied, and Amanda's evidentiary motions are granted.

## II.    <u>FACTS</u>:

When Rufus Sr. initially took out the policy at issue in this case, his children were all minors, his wife, Darlene Brooks, was the primary beneficiary, and his brother, Roger Brooks, was the contingent beneficiary.  After Darlene's death, Rufus Sr. submitted a change of beneficiary naming his three children as primary beneficiaries with the proceeds to be distributed as follows: 34% to Nicholas and 33% each to Rufus Jr. and Amanda.  Again, he designated Roger Brooks as his contingent beneficiary.  The change of beneficiary form was signed by Rufus Sr. and witnessed by Rufus Jr., and upon its receipt, Old Line changed the beneficiaries of record to reflect the new designation.

On March 27, 2005, Rufus Jr. and Rufus Sr. became involved in a heated argument regarding the father's intention to remarry.  After Rufus Sr. went to bed, one son grabbed a knife and the other a pistol and together they stabbed and shot their father to death.  As the result of negotiations with the state, Rufus Jr. and Nicholas pled guilty to charges of manslaughter and conspiracy to commit murder in connection with their father's death.  Detectives with the Jackson Police Department also actively investigated Amanda Brooks to determine whether she

played a role in her father's murder.  That investigation is now closed; no charges were brought against Amanda.

### III.    ANALYSIS:

#### A.    Disqualification of Rufus Jr. And Nicholas:

Before addressing the competing claims of Amanda and Roger, the Court first holds that, because of their role in their father's homicide, Rufus Jr. and Nicholas are disqualified from receiving any of the proceeds of the policy.  Roger and Amanda agree on that position and neither of the sons have claimed otherwise.  Therefore, Roger's motion is granted to the extent it addresses the rights of Rufus Jr. and Nicholas under the policy.

By operation of Mississippi's "slayer statutes," one who wilfully causes or procures the death of another is not entitled to inherit from the other either by will or by intestate descent and distribution.  Miss. Code. Ann. §§ 91-1-25 and 91-5-33 (2000).  Instead, the decedent's property passes as if the one who caused the death had predeceased the other.  *Id.*  In furtherance of Mississippi's public policy, those statutory provisions have been applied to cases where the property in question was insurance proceeds rather than inheritance through a decedent's estate. *Gholson v. Smith*, 48 So. 2d 603, 605 (1950).  Therefore, under applicable Mississippi law, when a beneficiary to a life insurance policy wilfully causes or procures the death of the insured, he or she is not entitled to any share in the proceeds and the policy should be paid as if that beneficiary had predeceased the insured.

Rufus Jr.'s and Nicholas's pleas to manslaughter charges, standing alone, do not require the conclusion that they *wilfully* caused their father's death such that the policy behind the slayer statutes should be applied here.  *See Hood v. Vandevender*, 661 So. 2d 198, 201 (Miss. 1995)

(wife's plea to charge of manslaughter standing alone not enough to show that she wilfully caused husband's death and normal rules of survivorship should not be upset); *Henry v. Toney,* 50 So. 2d 921 (1951); *Franklin Life Ins. Co. v. Strickland,* 376 F. Supp. 280 (N.D. Miss. 1974).

In this case, however, there is more than Rufus Jr.'s and Nicholas's pleas to manslaughter.  Their pleas to the additional charge of conspiracy to commit murder together with Rufus Jr.'s description of the events leading to his father's death during his plea hearing provide sufficient evidence to conclude that the two brothers *wilfully* caused their father's death.  As a matter of public policy, as expressed by the Mississippi Legislature and as applied to life insurance by the Mississippi Supreme Court, they are not entitled to take as beneficiaries under the life insurance policy and distribution under the policy should proceed as if Rufus Jr. and Nicholas predeceased their father.[2]  Miss. Code. Ann. §§ 91-1-25 and 91-5-33; *Gholson*, 48 So. 2d at 605.

### B.    The Contest Between Amanda and Roger:

All of the above is prelude, albeit necessary prelude, to the real dispute in this case.  With the conclusion that Rufus Jr. and Nicholas will not take under the policy, the Court must decide, as between Amanda and Roger, who is entitled to what proceeds.  Amanda's position rests on one argument:  Because Amanda survived as a primary beneficiary, the contingency which would allow her uncle to become a beneficiary never occurred.

Roger, however, asserts several reasons why he is entitled either to all of the proceeds or to the shares originally designated for Rufus Jr. and Nicholas.  First, he claims the change in

---

[2]In addition, Nicholas assigned any interest he may have under the policy to his sister.  In their submissions, Amanda and Roger argue about the effect of that assignment.  Because Nicholas was disqualified, he had no interest to assign.

beneficiary form submitted by Rufus Sr. was deficient and, therefore, not effective.  As a result, according to Roger, he should take the whole policy amount as the contingent beneficiary since the original primary beneficiary, Darlene Brooks, predeceased Rufus Sr.  Second, he says that Amanda was a participant or co-conspirator in her father's death and should be barred from taking under the policy just like her brothers.  Failing those two arguments for the entire proceeds of the policy, Roger maintains that as contingent beneficiary he is entitled to the shares originally designated for Rufus Jr. and Nicholas.  That is, he argues that Rufus Sr.'s designations of each of his three children should be treated as separate benefits and that each should stand or fall on its own with Roger as the contingent beneficiary to each.

### 1.      Effectiveness of Rufus Sr.'s Change of Beneficiary:

In his motion for summary judgment, Roger argues that he should take 100% of the proceeds because Rufus Sr.'s attempt to change the primary beneficiaries from his deceased wife to his three children was not effective.  The subject policy allows the policy holder to change beneficiaries as follows:

**CHANGE OF OWNER OR BENEFICIARY**

While this policy is in force the owner may change the beneficiary or ownership by written notice to us.  When we record the change, it will take effect as of the date the owner signed the notice, subject to any payment we make or other action we take before recording.

On December 12, 2003, Rufus Sr. signed a standardized change of beneficiary form, and the witness line bears Rufus Jr.'s signature.  Roger now argues that the change was ineffective because Rufus Jr. testified that he had never seen the form that bore his signature on the witness line.  However, Rufus Jr. repeatedly admitted that his signature on the witness line was authentic

but that his father asked him to witness documents without allowing Rufus Jr. to see the contents.

The Mississippi Supreme Court has held that "where an insured evidences an intent to change beneficiaries, and does all (s)he can do to comply with the requirements of the policy, substantial compliance will be found and the change of beneficiaries will be upheld." *Bell v. Parker*, 563 So. 2d 594, 598 (Miss. 1990) (change effective when policy required change to be in writing but insured communicated change to company only orally); *see Gayden v. Kirk*, 43 So. 2d 568, 569 (Miss. 1949) (specific requirements for a change in beneficiary are for the benefit of the insurer not the beneficiaries, and when insurer interpleads the policy proceeds it waives any defect in the purported change). In reaching its decision, the Mississippi Supreme Court relied in part on an earlier decision in which it reaffirmed the maxim that "equity will regard that as done which ought to have been done." *Bell*, 563 So. 2d at 598 (*quoting Faulkner v. Faulkner*, 5 So. 2d 421, 422-23 (Miss. 1942)).

In this case, there is no dispute that Rufus Sr.'s signature appears on the form, nor is there any dispute that Rufus Jr.'s witnessing signature is authentic. Finally, Old Line acknowledged the change in a letter to Rufus Sr. dated January 9, 2004. This occurred more than a year before Rufus Sr.'s death, and there is no record evidence that Rufus Sr. ever disputed the change in beneficiaries. The Court concludes, therefore, that Rufus Sr. effectively changed the designation of beneficiaries to his three children. Therefore, as to this point Roger's motion should be denied.

## 2.     Amanda's Alleged Role in Rufus Sr.'s Death:

Roger also seeks summary judgment by arguing that Amanda cannot recover because she was a co-conspirator or co-participant in her father's death.  Roger bases his argument on statements by two of his and Rufus Sr.'s sisters and on the fact that Amanda was, at one point, investigated by the Jackson Police Department in connection with the homicide.  According to affidavits and a Jackson Police Department statement submitted by Roger, these two sisters say that Rufus Sr. told them that he overheard Amanda talking on the telephone and saying: "It would happen to daddy this week; with his mean and hateful self."  All three of these documents are subject to motions to strike.

For the Court to consider a submission as evidence in support of or in opposition to a summary judgment motion, the submission must state facts that are based on the personal knowledge of the affiant and that would be admissible in evidence.  Fed. R. Civ. P. 56(e).  Hearsay evidence in summary judgment affidavits is inadmissible and entitled to no weight.  *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980); *see Gibson v. Liberty Mut. Group*, 129 Fed. Appx. 94, 95 (5th Cir. 2005).

The pertinent parts of the affidavits and the police statement contain multiple layers of hearsay.  That is, each of the witnesses testify as to Rufus Sr.'s out of court statement to them about Amanda's out of court statement that he overheard.  In order for those affidavits and the police statement to be admissible here, each level of hearsay must fall within one of the exceptions to the hearsay rule.  Fed. R. Evid. 805.

Roger makes a somewhat compelling argument that Amanda's statement was an admission by a party opponent and, therefore, excluded from the definition of hearsay by Federal

7

Rule of Evidence 801(d)(2)(A).  However, because Rufus Sr.'s statement to his sisters is hearsay not redeemed by any exception, Roger fails to satisfy the requirement of Rule 805, and the Court need not determine whether Rule 801(d)(2)(A) properly applies to Amanda's statement.[3]

Roger's strongest argument for the admissibility of Rufus Sr.'s out of court statement to his sisters is that it constituted a statement under belief of impending death and is excepted from the hearsay rule by Rule 804(b)(2).  That rule makes an exception for "a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." The shortfall in Roger's argument is that the circumstances fail to suggest Rufus Sr. believed his death was imminent.

The historical policy behind admission of dying declarations is based on the belief that one facing death is unlikely to lie.  *Idaho v. Wright*, 497 U.S. 805, 820, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990).  This rationale does not exist unless the declarant believes death is imminent. *See Shepard v. United States*, 290 U.S. 96, 100, 54 S. Ct. 22, 24, 78 L. Ed. 196 (1933) ("Fear or even belief that illness will end in death will not avail of itself to make a dying declaration. There must be 'a settled hopeless expectation' . . . that death is near at hand, and what is said must have been spoken in the hush of its impending presence.  . . .  The patient must have spoken with the consciousness of a swift and certain doom.")  In a pre-rules decision, the Fifth Circuit Court of Appeals observed that a "declarant's sense of impending death may be made to appear 'from the nature and extent of the wounds inflicted being obviously such that he must have felt or known

---

[3]Even if Roger were able to meet the requirements of Rule 805 by showing that both of the out of court statements contained in the affidavits either were not hearsay or met one of the hearsay exceptions, there still would remain a question as to whether Amanda's alleged statement would amount to "serious probative evidence" or "substantial evidence."  *State Farm Life Ins. Co. v. Gutterman*, 896 F. 2d 116, 118 (5th Cir. 1990) (affirming summary judgment for decedent's wife on claim of decedent's children that wife wilfully procured decedent's death when evidence of wife's involvement did not amount to "seriously probative evidence.").

that he could not survive.'"  *U.S. v. Mobley* , 421 F. 2d 345, 347 (5th Cir. 1970) (*citing Mattox v.

*U.S.*, 146 U.S. 140, 151, 13 S. Ct. 50, 54 (1892)).

In this case, there is no evidence suggesting that Rufus Sr. believed his death was

imminent when he told his sisters what he allegedly overheard Amanda say.  No wounds had

been inflicted, and Rufus Sr. went to sleep with his sons in the house after a heated exchange.

Such conduct is inconsistent with the belief that he faced imminent death at the hands of his

children.  The farthest his sisters go in their affidavits is to say that Rufus Sr. was "disturbed

about what he had overheard" and that he was concerned about the lack of trust between him and

his children.  Such evidence is insufficient to trigger the policy reasons supporting Rule

804(b)(2).

Finally, the Court notes that the statement was allegedly reported to the sisters one week

before the murder.  In *Mattox*, the United States Supreme Court noted that "[t]he length of time

elapsing between the making of the declaration and the death is to be considered, although … it

is the impression of almost immediate dissolution, and not the rapid succession of death, that

renders the testimony admissible."  *Mattox*, 146 U.S. at 151, 13 S. Ct. at 54.  This Court is

unaware of any binding authority that allows hearsay statements under this exception when the

statement occurs nearly a week before the fatal blow is even struck.

Accordingly, Rufus Sr.'s statement to his sisters is hearsay and is not excepted from the

rule as a dying declaration.[4]  Because the statement contained in both the sisters' affidavits and in

---

[4]Roger also attempts to argue that Rufus Sr.'s statement to his sisters should be admitted as either an excited utterance (Fed. R. Evid. 803(2)) or a present sense impression (Fed. R. Evid. 803(1)).  Given the context in which Rufus Sr. made the statement in question, it clearly does not fall within either of those exceptions to the hearsay rule, and the Court rejects Roger's arguments on those grounds.

their written statement given to the police is hearsay that falls outside the scope of the proffered hearsay exceptions, that evidence is inadmissible, and the Court grants Amanda's motions to strike the affidavits and the written statement.

The only other evidence Roger proffers to show that Amanda was somehow involved in her father's death is the fact that, at one time, the Jackson Police Department investigated her possible involvement in the homicide.  Even if police detectives still suspected Amanda of complicity in her father's death, such "evidence" would fail to create a genuine issue of fact as to whether Amanda wilfully caused or procured her father's death.  What is more though, the Jackson Police Department has formally closed its investigation of Amanda.  Absent admissible evidence showing Amanda was involved in her father's death, there is no reason for this Court to upset the normal operation of Rufus Sr.'s beneficiary designation.  *Hood*, 661 So. 2d at 201; *see State Farm Ins. Co. v. Gutterman*, 896 F.2d 116, 118-19 (5th Cir. 1990) (fact of active police investigation of beneficiary, even with more, is not substantial evidence that beneficiary wilfully caused death of insured).  Roger's motion for summary judgment on this issue is denied.[5]

### 3.    The Disposition of Rufus Jr.'s and Nicholas's Shares:

The only remaining issue is whether, as a matter of law, the Court can grant either parties' motion for summary judgment with respect to Roger's and Amanda's claims for the shares of the life insurance proceeds originally intended for Rufus Jr. and Nicholas.

As an initial matter, the parties agree that 1) the policy is silent as to when a contingent beneficiary will receive policy proceeds; 2) there is no binding authority on this point; and 3) the

---

[5]Although the Court denies Roger's motion on this issue, Amanda has not moved for judgment with respect to her alleged participation, nor can her motion be fairly read to address that issue.  So, the ruling is limited at this point to the denial of Roger's motion for summary judgment.

Court must interpret the contract to determine Rufus Sr.'s intent.  The parties quicky part ways, however, on whether the Court should construe the policy in light of analogous probate law. Amanda concedes that no Mississippi case has ever applied probate principles to an insurance policy in this context but argues that the Court should view the beneficiary designation like a class gift that would pass to the sole remaining primary beneficiary.  The argument begs two questions: 1) should probate construction apply; and 2) was this a class gift.  Roger rejects the applicability of probate construction, but argues that if it applies, then the Court should construe the beneficiary designation as making individual gifts which would allow Roger to step into the shoes of the two sons and recover two-thirds of the policy.  Roger's memorandum in opposition to Amanda's motion further argues that a question of fact exists as to Rufus Sr.'s intent.

"Contracts of insurance, like all other contracts, must depend for their construction upon the language employed by the parties to express their intentions; and this leads to an examination of the contract."  *Mississippi Mut. Ins. Co. v. Ingram*, 34 Miss. (5 George) 215, 1857 WL 2695, *9 (Miss. Err. & App. 1857).  The Court must take "the policy as a whole, considering all the relevant portions together and, 'whenever possible, should give operable effect to every provision in order to reach a reasonable overall result.'" *Progressive Gulf Ins. Co. v. We Care Day Care Center, Inc.*, 2006 WL 2865495,  *2 (Miss. App. Oct. 10, 2006) (*quoting J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.,* 723 So. 2d 550, 552 (¶ 8) (Miss. 1998)).  Further, while no Mississippi law specifically addresses this issue, other jurisdictions have looked to the rules of construction applied to wills when the determination of the appropriate beneficiary is not clear. *Continental Ins. Co. v. Madonia*, 18 So. 2d 310, 312 (La. 1944); *see* 4 Lee. R. Russ & Thomas R. Segalla, *Couch on Insurance* § 59:9 (3d ed. 1996) (collecting cases).  Finally, interpretation of an

insurance contract presents a question of law.  *Lewis v. Allstate Ins. Co.,* 730 So. 2d 65, 68 (¶ 12) (Miss.1998).  However, where the contract is susceptible to more than one reasonable interpretation, it is ambiguous and the intent of the parties must be decided by the trier of fact. *Mississippi Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1265 (Miss. 2002); *Lamb Const. Co. v. Town of Renova*, 573 So. 2d 1378, 1383 (Miss. 1990).

   To determine Rufus Sr.'s intent, the Court looks first to the contract.  As stated, the policy at issue is completely silent on the crucial question of whether the contingent beneficiary steps into the shoes of the disqualified primary beneficiaries.  Moreover, neither party has cited any binding authority on this point.  Accordingly, the contract language – or lack thereof – is susceptible to the two interpretations offered by the parties.  Either Roger is entitled to the sons' portions of the proceeds, or Amanda takes 100%.  Simply stated, Rufus Sr.'s intent is a question of fact for the jury under traditional contract interpretation and both motions for summary judgment must be denied.  *Crosby Memorial Hosp. v. Abdallah*, 2002 WL 31016466, *3 (5th Cir. 2002) (applying Mississippi law and holding, "If the contract is determined to be ambiguous, however, the intent of the parties is a question of fact."); 4 *Couch on Insurance* 58:4 (issues involving competing claims of beneficiaries frequently "create questions of fact which can only be decided by the trier of fact").

   This result does not change if the Court looks to the law of probate as Amanda suggests. Following Amanda's recommended approach, the Court must first determine whether the designation of Rufus Sr.'s children as beneficiaries should be treated like a gift to a class or like three separate gifts to individuals.  Mississippi law dictates that a gift to a class would be

distributed among the surviving class members whereas individual gifts would not.  *Cain v. Dunn*, 241 So. 2d 650, 651 (Miss. 1970).

Even under this approach, the question quickly returns to Rufus Sr.'s intent.  Did he intend to make a class gift such that Amanda is now entitled to 100%, or did he intend individual gifts as Roger maintains allowing him to collect two-thirds of the proceeds?  One of the cases Amanda cites on this point demonstrates why a question of fact exists and summary judgement must be denied.  In *Moffett v. Howard*, 392 So. 2d 509 (Miss. 1981), the Mississippi Supreme Court observed:

> When the beneficiaries of a will are specified by their individual names, it may be reasonably inferred, prima facie, that the transferor was thinking of them as separate and distinct individuals and not as a group or an entity.  *Accordingly, a "construction preference" is said to be that if transferees are specified by name the gift is one to individuals and not to a class.*  However, even though the testator has named his beneficiaries individually, *additional evidence of a different intent may be present from the terms of the will and surrounding circumstances* which would require a conclusion that the transferor was group-minded with respect to his beneficiaries even though he named them individually.

392 So. 2d at 510 (emphasis added)(*citing Lee v. Foley*, 224 Miss. 684, 80 So.2d 765 (1955)).

In this case, Rufus Sr. listed the children individually, and Roger argues that this, along with the slightly differing percentages assigned to each primary beneficiary proves that Rufus Sr. made a series of individual gifts.  Amanda points out that Rufus Sr. stated his desire to take care of his "children" on the original application and that the percentages assigned after the change in beneficiary, though slightly different, are approximately equal thus indicating a "group-minded" approach.  The terms of the policy along with other "surrounding circumstances" may well trump

the "construction preference" for finding that Rufus Sr. intended individual gifts.  Nevertheless, his intent is a question of fact for the jury.[6]

### C.    Amanda's Motion to Strike Roger's Expert:

Roger submitted the expert report and affidavit of William D. Hager in support of his motion for summary judgment.  Hager, an attorney licensed in Florida, Iowa, and Illinois, has extensive experience working in and for the insurance industry and in regulating the insurance industry.  Amanda has moved to strike Hagar's expert opinions claiming that they constitute nothing more than legal opinions.

The scope of permissible expert testimony is primarily controlled by Rules 702 and 704 of the Federal Rules of Evidence.   Rule 702 permits expert testimony that "will assist the trier of fact to understand the evidence or determine a fact in issue."  Rule 704(a) states that opinion testimony "otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact."   "Neither rule, however, permits expert witnesses to offer conclusions of law."  *C.P. Interests, Inc. v. California Pools, Inc*., 238 F.3d 690, 697 (5th Cir. 2001) (*citing  Owen v. Kerr McGee Corp*., 698 F.2d 236, 240 (5th Cir.1983)).  Moreover, as stated in the Advisory Committee Notes to Rule 704, "Rules 702 and 403 provide ample assurances against the admission of opinions which would merely tell the jury what result to reach."  Note of Advisory Committee on 1972 Proposed Rules.

---

[6]Mississippi cases involving probate issues are generally decided in chancery court without the benefit of a jury.  Often, it is difficult to tell whether issues are decided as questions of law or fact.  However, in cases such as *Cain*, it is apparent that the court reviewed "surrounding circumstances" when determining intent and went beyond the face of the contract.  *Cain*, 241, So. 2d at 651("The evidence shows that [testator] was very close to and fond of all his grandchildren, including [the disputed beneficiary] after her birth.")  Moreover, the Mississippi Supreme Court has stated on occasion that questions of a testator's intent are questions of fact.  *See, e.g.*, *Estate of Lyles*, 615 So. 2d 1186 (Miss. 1993); *Tipton v. Saulsberry*, 78 So. 2d 893 (Miss. 1955).

The Advisory Committee Notes to Rule 704 provide a helpful example: "The question 'Did T have capacity to make a will?' would be excluded, while the question 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed."  The Fifth Circuit Court of Appeals has observed from this that

> [t]he first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover, allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.

*Owen*, 698 F.2d at 240.

With that backdrop, the Court must "identify first what the disputed expert testimony is, then compare that testimony to the ultimate issues to be decided by the trier of fact" *C.P. Interests, Inc.*, 238 F.3d at 697.

Hagar's opinion is succinctly stated in his report.  Because the sons are ineligible, "the balance of the proceeds properly go to (and belong to) the contingent beneficiary, Roger Brooks, the insured's twin brother, who should properly take 67% of the proceeds."  Hagar supports this opinion in two ways.  First, Hagar concludes from the undisputed manner in which Rufus Sr. initially completed the beneficiary designation and then completed the change in beneficiary form that "it is clear that the insured's intent under the beneficiary clause was to provide three separate and distinct benefits to his children."  Second, Hagar cites selected portions of *Couch on Insurance* to describe the rights of contingent beneficiaries.  Comparing those opinions to the

15

ultimate issue to be decided by the trier of fact – Rufus Sr.'s intent – the Court concludes that Hagar's opinions should be excluded.

Hagar's ultimate conclusion that Roger is entitled to 67% of the proceeds is no different than the proffered expert opinion in *Owen v. Kerr McGee Corp*.  There, the Fifth Circuit Court of Appeals affirmed the trial court's decision to sustain an objection to the question: "Now, after hearing all of the evidence, looking at all of the exhibits, hearing in particular all of the witnesses, primarily plaintiff's witnesses, do you have any opinion as to the cause of the accident of July 8th, 1978?"  *Owen*, 698 F.2d at 240.  Hagar is similarly providing the legal conclusions to be drawn from the evidence and telling the jury what result to reach.

Moreover, the bases for Hagar's conclusion make matters worse.  Starting with his opinion as to Rufus Sr.'s intent, Hagar simply examines the way Rufus Sr. completed the beneficiary designations and concludes what Rufus Sr. intended.  However, Hagar possesses no specialized knowledge that places him in a position to assist the jury in determining what Rufus Sr. was thinking.  *See Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.,* 410 F. Supp. 2d 417, 423 (W.D. Pa. 2006) ("An expert simply is not in any better position than the jury to assess another's subjective intent.");  *Association Ben. Services, Inc. v. AdvancePCS Holding Corp*., No. 04 C 3271, 2005 WL 2335484, *4 (N.D.Ill. Sept. 23, 2005) (party's intent "is a matter within the province of the jury as ultimate finder of fact"); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc*., No. 97 C 5696, 2004 WL 783356, at *6 (N.D. Ill. Jan.28, 2004) (same); *Aerotech Resources, Inc. v. Dodson Aviation, Inc*., No. 00-2099-CM, 2001 WL 474296, at *2 (D. Kan. Apr.4, 2001)

(striking expert's testimony regarding parties' intent in entering into a contract); *Tasch, Inc. v. Sabine Offshore Serv., Inc.*, No. 97-15901 JAB, 1999 WL 596261 (E.D. La.1999) (same).[7]

The only other basis for Hagar's opinions stated in his report is his citation to a well known legal treaties on insurance law. Hagar selectively cites passages from *Couch on Insurance* and explains why those passages require a jury verdict in favor of Roger. However, the Court will provide the applicable law, and "allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen*, 698 F.2d at 240. Finally, Hagar's reliance on *Couch on Insurance* would be open to examination regarding the selectiveness of the quotes Hagar cited and whether they were taken out of context. To understand the comments Hagar cites from *Couch*, you must examine the supporting cases cited in *Couch*. Accordingly, and as an additional basis for striking Hagar's opinions, the Court rules that the opinions would violate Rule 403 due to confusion and prejudice. Amanda's motion to strike is granted.[8]

---

[7]Although not necessary for this ruling, the Court is concerned in its role as a gate keeper as to the methodology and reliability of Hagar's speculative opinion regarding Rufus Sr.'s intent. Fed. R. Evid. 702. As just one example, Hagar states that Rufus's intent that Roger receive 67% of the proceeds is evidenced by the fact that Roger was the contingent beneficiary in the original designation and after the change in beneficiaries, whereas the children were only named as beneficiaries after the change. It is not clear why the first designation is relevant to Hagar's conclusion, but assuming it is relevant, Hagar failed to consider the fact that the children were minors when the first designation was made, that the mother of Rufus Sr.'s children was named as the primary beneficiary, and that Rufus Sr. stated in the original application that one of the purposes of the policy was to provide for his "children." That same application failed to mention Roger. Again, however, it appears that Hagar is doing nothing more than telling the jury what to conclude.

[8]On March 14, 2007, Roger filed certain supplemental evidentiary materials [111]. A review of those materials shows that the only item that was not already of record is Hager's affidavit incorporating his report. Amanda moved to strike those materials [112]. Because of the Court's ruling regarding Hager's opinion, it is not necessary to address Amanda's motion to strike the supplemental materials. Therefore, that motion is denied as moot.

**D.      Roger's Motion for Default Judgment:**

Roger alternatively argues that the Court should enter a default judgment against Amanda.[9]  A review of the docket shows that Amanda timely answered Old Line's complaint for interpleader and filed her cross-claim against the other defendants.  Thereafter, Roger timely answered the complaint and Amanda's cross-claim and filed his cross-claim against Amanda and her brothers.  Amanda timely answered Roger's original cross-claim on December 29, 2005.[10]  Thereafter, Roger requested and was given leave to file an amended cross-claim.  After he filed that amended cross-claim on May 30, 2006, Amanda did not request additional time in which to answer, and did not serve her answer until December 14 – nearly six months after it was due.[11]  Roger now seeks a default judgment.

An entry of default judgement by the court under Rule 55(b)(2) against a party who has failed to timely answer rests within the sound discretion of the court.  *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *see Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).  Moreover, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."  *Lewis*, 236 F.3d at 767 (*quoting Sun Bank of Ocala v. Pelican Homestead and Savings*, 874 F.2d 274, 276 (5th Cir. 1989).

---

[9]He also argues that the Court should enter a default judgment against Rufus Jr. and Nicholas.  However, because the Court has resolved the claims against those two on the merits, it is unnecessary to consider whether to enter a default judgment against them.  To that extent, therefore, the motion for default judgment is denied as moot.

[10]Amanda's answer to the cross-claim [13] is mislabeled on the clerk's electronic docket as "CLAIM Cross-Claim," and Roger omitted any reference to that answer.  Furthermore, Amanda failed to bring the inaccuracy in the procedural history to the Court's attention.  Correction of this inaccuracy is the reason for the withdrawal of the March 21, 2007 Order.

[11]Federal Rule of Civil Procedure 12(a)(2) requires a party who has been served with a cross-claim to answer within twenty days after being served.

The factors a court should consider in deciding whether to grant a default judgment include

> whether material issues of fact [exist], whether there has been substantial prejudice, whether the grounds for default are [clear], whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default.

*Lewis*, 236 F.3d at 767.

Consideration of those factors leads to the conclusion that a default judgment would not be appropriate here.  The previous sections of this opinion amply demonstrate that there are genuine issues of material fact.  In addition, Roger cannot show that he has suffered substantial prejudice by Amanda's delay in answering.[12]  Because Amanda did not respond to Roger's request for a default judgment, the Court does not have the benefit of her position regarding good faith mistake or excusable neglect.  However, the Court does note that for a substantial period of time following Roger's filing of his amended cross-claim the case was nearly completely stalled not by Amanda's failure to answer but by the pending criminal investigation and prosecution of Rufus Jr. and Nicholas. Additionally, a default against Amanda would be an extremely harsh result and would deprive her of life insurance benefits her father intended for her care and

---

[12]Amanda clearly stated her position in her answer to Roger's original cross-claim and in her own cross-claim.  The only difference between Roger's original cross-claim and the amended cross-claim is that he asserts that Darlene Brooks remained the primary beneficiary on the policy.  Amanda clearly takes a position contrary to that in her answer to the complaint, in her cross-claim, and in her answer to Roger's original cross-claim.  Roger knew Amanda's factual position as early as December 29, 2005.  Both Amanda and Roger have participated in discovery. The real delays in this case have been caused by circumstances outside of both Roger's and Amanda's control as evidenced by Roger's motions to extend the discovery and motions deadlines, Roger and Amanda's joint motion to stay, their joint motion to continue the trial and extend the discovery and motions deadline, and their later joint motions to once again extend the discovery and motions deadlines.  Just a cursory review of the docket shows that Amanda's failure to answer the cross-claim did nothing to slow Roger down in his prosecution of this case.

support.  It would further deprive Amanda of the opportunity to prove her claim to 100% of the

proceeds.

Finally, while there are almost no cases in which the Fifth Circuit reversed a trial court's

decision to deny default judgment, the court has frequently reversed district court orders denying

relief from default judgment.  This Court would likely feel compelled to grant Amanda relief

from a default judgment in this case.  *Compare Lindsey*, 161 F.3d at 892-93; *Lewis*, 236 F.3d at

767; *with Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F,2d 1277,

1279-81 (5th Cir. 1985); *U.S. v. One Parcel of Real Property*, 763 F.2d 181, 183-84 (5th Cir.

1985); *E.F. Hutton & Co. v. Moffatt*, 460 F.2d 284, 285 (5th Cir. 1972).

Consequently, in the light of those factors and in the exercise of the Court's discretion,

the Court concludes that a default judgment against Amanda would not be appropriate, and

Roger's motion for default judgment is due to be denied.

THEREFORE, THE COURT ORDERS AS FOLLOWS:

First, Amanda Brooks's motions to strike the affidavits of Bessie Brooks [94] and Chyrel

Ephron [93] and the motion to strike their statement given to the Jackson Police Department [96]

are granted.

Second, Amanda Brooks's motion to strike the expert report of William D. Hager [91] is

granted, and Amanda Brooks's motion to strike supplemental evidentiary materials [112] is

denied as moot.

Third, Amanda Brooks's motion for summary judgment [75] is denied.

Finally, Roger Brooks's motion for summary judgment or in the alternative for default judgment [87] is granted in part, denied in part, and denied in part as moot.

**SO ORDERED AND ADJUDGED** this the 22nd day of March, 2007.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE